UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FLASTER/GREENBERG P.C. | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 08-4333 |
| v. | : | **Memorandum Opinion and Order** |
| BRENDAN AIRWAYS, LLC d/b/a/ USA 3000 AIRLINES, | : | |
| Defendant. | : | |

This matter comes before the Court on a Motion to Dismiss filed by Defendant, Brendan Airways, LLC d/b/a/ USA 3000 ("Defendant"), on September 16, 2008. Defendant's motion seeks to dismiss Counts II, III, IV, and V pursuant to Fed. R. Civ. P. 12(b)(6). The Court has reviewed the written submissions of the parties and heard oral argument on May 27, 2009. For the reasons expressed on the record during oral argument and for the reasons that follow, Defendant's motion is granted in part and denied in part.

**Factual History**

On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and from those facts gives Plaintiff all reasonable inferences. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). From that perspective, the facts are as follows. On or about February 22, 2008, Plaintiff, Flaster/Greenberg, P.C., a New Jersey law firm ("Plaintiff"), entered into a written agreement with Defendant. (Compl. ¶3.) In the agreement entitled, "Group Space Agreement," Defendant agreed to transport via airplane nineteen lawyers and

1

management employees of Plaintiff's law firm from Philadelphia, Pennsylvania to Fort Lauderdale, Florida to attend Plaintiff's annual business retreat on October 23, 2008. (Compl.¶3, ¶7). Additionally, Defendant agreed to transport sixteen employees on Sunday, October 26, 2008 and eleven employees on Tuesday, October 28, 2008 from Fort Lauderdale, Florida to Philadelphia, Pennsylvania. (Compl. ¶ 8). In consideration Plaintiff paid an initial non-refundable deposit of $2,455.62. (Compl.¶9.)

Prior to entering into the Group Space Agreement, Plaintiff advised Defendant of the necessity of transportation arrangements for its annual business retreat in Florida in October 2008. (Compl.¶4.) Further, Plaintiff told Defendant that as a law firm it was important to recognize the economic value of time for its lawyers. (Compl.¶5.) Plaintiff further advised Defendant that "it was important to have reliable transportation arrangements to minimize interference with their legal work, and maximize their ability to provide legal services," in addition to conducting their retreat efficiently. (Compl.¶5.) Defendant "knew, or at the very least should have known, that if it failed to provide the transportation agreed upon," Plaintiff's retreat would be significantly disrupted and Plaintiff would suffer damages. (Compl.¶6.)

On May 16, 2008 —three months after the parties entered into the Group Space Agreement— Defendant wrote to Plaintiff stating that "USA 3000 has most recently made the decision to withdraw their Fall service to and from [Fort Lauderdale] due to the rising cost of fuel." (Exhibit 2, "Cancellation Letter.") Defendant issued Plaintiff a refund of the "non-refundable" $2,455.63 deposit in full. (Compl. ¶13.) Following the receipt of the Cancellation Letter, Plaintiff contacted Defendant and demanded performance of the transportation agreed upon or, in the alternative, pay damages suffered as a result of the

2

breach. (Compl. ¶14.) Defendant refused to remedy the breach other than returning the deposit. (Compl. ¶16.) Defendant attempted to mitigate its damages by making alternative transportation arrangements, but the alternative arrangements cost $2,000 more than the Group Space Agreement itinerary. (Compl. ¶19).

Due to the breach, twelve of Plaintiff's attorneys had to stay in Fort Lauderdale, costing the firm $50,000.00 in lost revenue on Monday, October 27, 2008. In addition, Plaintiff had to pay $2,400.00 in hotel room expenses for the extra night in the Florida hotel. (Compl. ¶23.) Expenses for meals and rental cars were also incurred. (Compl. ¶24.)

Plaintiff filed this civil action alleging the following causes of action: breach of contract (Count I), violation of the New Jersey Consumer Fraud Act (Count II), quantum meruit (Count III), fraud in the inducement (Count IV) and a breach of the covenant of good faith and fair dealing (Count V).[1] On September 16, 2008 Defendant filed the instant motion to dismiss, pursuant to Fed. R. Civ. P. 12 (b)(6), as to Counts II, III, IV, and V of the complaint.

## DISCUSSION

### I. Standard Under Federal Rule of Civil Procedure 12(b)(6)

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). "While a complaint attacked by a Rule 12(b)(6)

---

[1] The Complaint was filed in the Superior Court of New Jersey, Camden Vicinage and removed to this Court by Defendant. Jurisdiction is predicated upon 28 U.S.C. § 1331.

3

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Oshiver, 38 F.3d at 1384. Moreover, these allegations and inferences must be viewed in the light most favorable to the plaintiff. Id. However, a court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.").

It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp.,

561 F.2d 434, 446 (3d Cir. 1977).  The question before the court is not whether the plaintiff will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

**II. Motion to Dismiss Count II: Plaintiff's Claim Under the New Jersey Consumer Fraud Act Preempted by the Airline Deregulation Act**

### A. Express Premption

Preemption doctrine is rooted in the Supremacy Clause.  See U.S. Const., art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof…shall be the supreme law of the land.").  Under the doctrine, a state law yields to a federal law in any case where the state law either contravenes or interferes with the stated purpose of the federal law.  See Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985) (citing Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 211 (1824)).  Thus, "the purpose of Congress is the ultimate touchstone" in preemption analysis.  See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 103 (1963).  That purpose or intent is "primarily discerned from the language of the statute, and the statutory framework surrounding it." Medtronic, Inc., v. Lohr, 518 U.S. 470, 486 (1996) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and concurring in judgment)).  Notably, preemption applies in three distinct cases: 1) when Congress explicitly states its intention to preempt state law (express preemption); 2) when federal and state law cannot be harmoniously read together because they are in direct conflict (conflict preemption); and (3) when Congress legislates in a comprehensive manner so as to solely occupy a particular area of

5

the law (field preemption). Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 298 (3d Cir. 2008) (citations omitted).

Two principles inform the Court's judgment with respect to the preemptive scope inquiry. Medtronic, Inc., 518 U.S. at 485. First, there is a longstanding presumption against the preemption of state police power regulations. Cipollone v. Ligget Group, Inc., 505 U.S. 504, 518 (1992). Any preemption analysis must start with the "assumption that the historic police powers of the States [are] not to be superseded ... unless that was a clear and manifest purpose of Congress." See Altria Group, Inc., v. Good, 129 S.Ct. 538, 543 (2008) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Nevertheless, preemption may still apply even if the law at issue is a "matter of special concern to the States". Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152 (1982). The Supreme Court recognizes that "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." Id. (quoting Free v. Bland, 369 U.S. 663, 666 (1962)). Accordingly, the second principle that informs the Court's judgment with respect to preemptive scope necessarily must be congressional purpose. Schermerhorn, 375 U.S. at 103. As stated above, congressional purpose or intent is best discerned from the language of the statute, and the statutory framework that surrounds it. Medtronic, Inc., 518 U.S. at 486. These principles provide the appropriate guideposts for the Court's preemptive scope analysis below.

### B. Airline Deregulation Act

Congress passed the Airline Deregulation Act ("ADA" or the "Act"), 49 U.S.C. § 41713, in 1978 in order to expressly preempt States from undoing certain benefits of the

federal deregulation of the airlines. Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992). The Act contains a preemption clause which states:

> [A] State, political subdivision of a State, or a political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart. 49 U.S.C. § 1305(a)(1).

The scope of the ADA's preemption clause has been defined by the United States Supreme Court in two decisions, Morales, 504 U.S. 37, and American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). While there is little case law regarding ADA preemption, these cases clearly establish the parameters of the preemption clause and intention of the Act. In Morales, the Supreme Court addressed whether guidelines adopted by the National Association of Attorneys General ("NAAG") were preempted by the ADA. The NAAG guidelines governed, *inter alia*, content of airline rate advertising in an effort to curtail deceptive advertising practices. Id. The guidelines were enforceable through a state's attorney general, in that case the State of Texas, under a state's consumer fraud protection statute. Id. In holding that the NAAG guidelines were preempted by the ADA, the Supreme Court noted that "preemption prevented states from barring allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 191 (3d Cir. 1998) (citing Morales, 504 U.S. 374 (1992)). The Court in Morales, also held that the words "related to" in the ADA statute express a broad preemptive purpose and that state actions having a connection to airline "rates, routes, or services" are preempted. Morales, 504 U.S. at 384. The Court further defined the scope of the ADA preemption clause articulating that state law need not specifically address the airline industry to be preempted; it is enough that the state law

affects- even if indirectly- the airline industry. Id. at 386.

In Wolens, the Supreme Court again considered whether a state consumer fraud act was preempted by the ADA. The issue in Wolens was whether a change in the frequent flyer program alleged in the complaint as violations of the Illinois Consumer Fraud and Deceptive Practices Act and as a breach of contract were preempted by the ADA. In considering the consumer fraud act violation, the Court, noting that the purpose of the Illinois Consumer Fraud Act was to serve as a guide and to police marketing practices, held that the consumer fraud act could not be applied to American Airline's decision to devalue mileage credits accrued by users of its frequent flyer program. 513 U.S. at 228. The Court reaffirmed that the ADA's purpose was to leave airlines to their own devices when it came to the selection and design of marketing to the exclusion of State regulation and held that the consumer fraud act claim was preempted by the ADA. Id. at 228.

Importantly, the Court ruled that the common-law breach of contract claim was not preempted by the ADA, because unlike a consumer fraud act claim that deals with state-imposed obligations, contracts are "self-imposed undertakings" designed to afford "relief to a party who claims and proves that an airline dishonored a term the airline itself stimulated." Id. at 223. Thus, pursuant to both Morales and Wolens, the scope of the ADA preemption extends to State imposed laws related to the "rates, routes, or services" of airlines, but does not affect "self imposed" undertakings.

### C. ANALYSIS

**1. Count II New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.2.**

Defendant seeks dismissal of Count II on the ground of federal preemption. The Court holds that the ADA expressly preempts Count II and grants the motion as to this

count.

Count II of the complaint alleges a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.2.  The complaint, in pertinent part states that:

> 31. Defendants have engaged in unconscionable commercial practices and have used deception, fraud, false pretenses, false promises and/or misrepresentations in <u>connection with the services it agreed to perform.</u> (emphasis added).
> 33. The manner in which Defendants represented that they would be <u>providing services</u>, including transportation services, to Flaster/Greenberg constitutes a plan or scheme not to <u>sell the service as advertised</u>, or not to sell the same at the <u>advertised price</u>, and constitutes an unlawful practice and a violation of the Act pursuant to N.J.S.A. 56:8-2.2.

The complaint tracks the language of the New Jersey Consumer Fraud Act, which makes unlawful:

> The advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the act to which this act is a supplement.

N.J.S.A. 56:8-2.2.  In connection with the purchase of services, Defendant allegedly made affirmative misrepresentations about its ability to provide service and knowingly concealed, suppressed, and omitted material facts with respect to the agreement. (Compl. ¶ 34. ) As a result of these alleged acts and omissions Plaintiff suffered and continues to suffer substantial damages. (Compl. ¶ 37).

During oral argument, Plaintiff skillfully attempted to distinguish its claim from one affecting the "rates, routes, and services" of the airlines as proscribed by the ADA. Plaintiff took particular care to clarify that this claim is not substantively related to the Defendant's cancellation of the agreed to route, but is aimed at the practice of entering into contracts without the intention to perform.  Stated differently, this count relates to

9

Defendant's self-imposed undertaking and the fact that the airline cancelled the contract for reasons not expressly permitted by the contract and then failed to offer any assistance in obtaining alternative travel arrangements. Plaintiff characterizes this conduct as aggravating circumstances which serve to elevate the claim from a standard breach of contract claim to an actionable New Jersey Consumer Fraud Act claim. Plaintiff also argues that the Court in <u>Wolens</u> left room for a claim under a state's consumer fraud act to survive preemption. Both arguments will be addressed in turn.

It is well settled that New Jersey's consumer fraud act is to be liberally construed and applies to breach of contract cases where the breach is unconscionable. <u>Kugler v. Romain</u>, 279 A.2d 640, 652 (N.J. 1971). But, even when read liberally, a plain reading of Count II has the forbidden effect of impacting the airline's ability to determine and set rates, routes and services and, as in <u>Wolens</u>, involves policing of marketing practices. 513 U.S. at 28. Count II is specifically directed at "the services [Defendant] agreed to perform" and "the manner. . . that [Defendant] would be providing services" with respect to the "advertised price". (Compl. at ¶¶ 31, 33). A straightforward application of the preemption clause of the ADA directs preemption. Permitting this claim to move forward as plead would impermissibly sanction regulation of the manner in which the airline advertises its services, interfere with the provision of those services to its passengers, and would constrain the airline's ability to cancel flights and/or routes- all of which offends the stated purpose of the ADA and is proscribed by the Act's preemption clause.[2]

Moreover, the facts upon which Plaintiff relies to elevate its claim to a cognizable

---

[2]On this point, the Court engaged Plaintiff in a discussion during oral argument, and the substance of that conversation is incorporated herein.

New Jersey Fraud Act claim directly affect rates, routes, and services. During oral argument, Plaintiff complained that after Defendant breached, it did nothing to aid Plaintiff in its search for an alternative itinerary. Essentially, Defendant did not offer the "service" of finding Plaintiff alternative travel arrangements, nor did it attempt to find Plaintiff an alternative "route". Rather than merely holding Defendant to its bargain, this claim in effect represents an "enlargement or enhancement [of the bargain] based on state law", a possibility foreclosed by Supreme Court. Wolens, 513 U.S. at 233; see also Travel All Over The World v. The Kingdom Of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996)(holding that a punitive damages claim was preempted because it related to rates, routes, and services of the airline and expanded the rights of the plaintiff beyond the contract). Here, recovery is properly sought under a breach of contract theory, plead in the complaint as Count I, against which Defendant does not move to dismiss. Given that Count II specifically alleges a claim involving the manner of service, and interferes with rates and routes of the airlines, pursuant to the dictates of Morales and Wolens, this claim is preempted by the ADA.

Next, Plaintiff's argument that the decision in Wolens leaves room for its consumer fraud act claim misconstrues the Supreme Court's opinion in that case. Plaintiff relies on the following excerpts from Wolens to support its contention that there is room for a consumer fraud act claim against an airline:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision

> having the force and effect of law' within the meaning of [§] 1305(a)(1)
>
> . . . . . . . . .
>
> But a breach of contract, without more, does not amount to a cause of action cognizable under the [Consumer Fraud] Act and the Act should not apply to simple breach of contract claims. The basis for a contract action is the parties' agreement; to succeed under the consumer protection law, one must show not necessarily an agreement, but in all cases, an unfair or deceptive practice.

513 U.S. at 228-29, 232 (internal citation and quotation omitted).

Contrary to Plaintiff's assertion, these excerpts do not suggest that Plaintiff's consumer fraud act claim can survive. Rather, read in the context in which they were written, the Supreme Court was substantively distinguishing a breach of contract claim from a consumer fraud act claim in response to an argument that the two "differ[ed] only in their labels, so that if Fraud Act claims are preempted, contract claims must be preempted as well." Id. The Court rejected this argument by explaining the substantive differences between the two claims. In so doing, it did not provide for the possibility that the consumer fraud act claim could survive, as Plaintiff here suggests. On the contrary, the Court was laying the foundation for its ruling permitting the common law breach of contract claim to survive preemption. "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 233.

Given that the ADA expressly preempts state laws when they relate to "rates, routes, and services" 49 U.S.C. § 41713 (b)(1), Count II is dismissed due to federal

preemption.[3]  Morales, 504 U.S. at 384.

**2. Count III Quantum Meruit**

Count III claims quantum meruit and states that "[t]here is due and owing from Defendant to Flaster/Greenberg the reasonable value of damages incurred by Flaster/Greenberg due to Defendant's breach of the Group Sales Agreement." Compl. at ¶ 43. "Quantum meruit is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." Allegheny Gen. Hosp. v. Phillip Morris, 228 F.3d 429, 447 (3d Cir. 2000) (internal quotations omitted). Given that there is a contract between the parties, namely the Group Sales Agreement, Defendant argues that quantum meruit is not a valid basis for recovery and should be dismissed.

Our Federal Rules permit alternative and even inconsistent pleadings providing that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically. . . ." Fed.R.Civ.P. 8(d)(2) . Likewise subsection (3) permits "separate claims or defenses . . . regardless of consistency." Fed.R.Civ.P. 8(d)(3).  At this stage in the litigation, the flexible pleading standards governing the complaint permit Plaintiff's claim of quantum meruit.  Indeed, Rule 8(e)(2) allows a plaintiff to plead two or more alternative claims against [a defendant] for either breach of contract or conversion, regardless of their consistency. See 5 Charles A. Wright & Arthur R. Miller, Federal Practice and procedure, § 1282 (3d ed. rev. 2008).

---

[3] In addition, the complaint is insufficiently plead for the same reasons discussed infra., at p. 14 with respect to the common law fraud claim.  Given that the claim is preempted, permitting Plaintiff an opportunity to amend would be futile.

During oral argument, Plaintiff conceded that if a legal contract exists, its claim for quantum meruit must be dismissed. However, as Plaintiff rightly points out, Defendants have not answered the complaint, instead choosing to proceed by filing the instant motion pursuant to Fed.R.Civ.P. 12(b)(6). As such, Defendant has not yet indicated whether it intends to challenge the validity of the contract. Until that happens, under the Federal Rules, Plaintiff's claim for quantum meruit must be permitted to go forward. Defendant's motion to dismiss Count III is denied.[4]

**3. Count IV Common Law Fraud**

Count IV charges fraud in the inducement. To establish a claim of fraudulent inducement in New Jersey a plaintiff must prove (1) a material misrepresentation of a presently existing or past fact, (2) with knowledge of its falsity and with the intention that the other person rely on it, and that there was in fact both (3) reasonable reliance and (4) resulting damages. Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005); Jewish Center of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981). Defendant argues that this count should be dismissed because the pleading falls short of the threshold requirements for specificity under Fed.R.Civ.P. 9(b).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(h) defines particularity as "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral

---

[4] Should Defendant agree that a legal contract governs the dispute between the parties, the Court expects that the parties will enter into a stipulation dismissing this claim.

and fraudulent behavior." Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir.2004) (citation and quotations omitted).  Examples of particularity include pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. at 224 (citation omitted).  In addition, a plaintiff "also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id. (citations omitted).

Plaintiff alleges that Defendant entered into the Group Sales Agreement without the intention to be bound by its terms.  The complaint is devoid of names or the specifics of what may have been said.  One court in this district found a similarly plead complaint insufficient.  "In the instant case, under the heading the sixth cause of action, plaintiff makes only conclusory statements. . . [t]hese statements do not meet the required level of specificity articulated in Rule 9(b) [as t]here is no indication of who made them, what specific misrepresentations were made, and when these statements occurred." Mardini v. Viking Freight Inc., 92 F.Supp.2d 378, 385 (D.N.J. 1999).

The Court finds that Count IV is insufficiently plead pursuant to Rule 9(b).  During oral argument, Plaintiff asked for leave to amend the complaint as to this count if it was found deficient. Plaintiff will be permitted to file an amended complaint to attempt to cure the pleading deficiency with additional material information necessary to put Defendant on proper notice.   Thus, this count will be dismissed without prejudice with the right to re-plead within fifteen days of the date of this opinion.  Plaintiff shall notify the Court in writing if it intends to abandon this claim.

**4. Count V Breach of Contract of Good Faith and Fair Dealing**

Count V claims a breach of the implied covenant of good faith and fair dealing.

"[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." Pickett v. Lloyd's & Peerless Ins. Agency, Inc., 621 A.2d 445 (1993). This implicit duty requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997) (internal citations and quotations omitted). Even where the express terms of the contract are not violated, a defendant who acts with improper purpose or ill motive can be found liable for breaching the implied covenant if the breach interferes with the plaintiff's reasonable expectations under the agreement. See Intarome Fragrance & Flavor Corp. v. Zarkades, No. 07-873, 2008 WL 5109501, at *6 (D.N.J. Dec.2, 2008) (citing DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir.2008)).

      Read liberally, plaintiff's complaint states a valid claim. In its breach of contract claim, Plaintiff alleges that Defendant had a contractual obligation to perform and that Defendant breached that contract. While this alone would be enough to survive a motion to dismiss, in New Jersey "a party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate." Sons of Thunder, Inc., 690 A.2d 588; see also Bak-A-Lum Corp. v. Alcoa Bldg. Prods., Inc., 351 A.2d 349 (N.J. 1976) (finding that defendant's conduct in terminating contract constituted bad faith although conduct did not violate express terms of written agreement).

      Given that the complaint sets forth a valid claim for breach of contract, which Defendant does not challenge, and that Defendant acknowledges that it did not perform the agreed to service, Plaintiff will be permitted to proceed with Count V of the Complaint

16

as plead.

## **CONCLUSION**

      For the reasons set forth above, Defendant's motion to dismiss is granted as to Count II and denied as to Counts III and V. Count IV is dismissed without prejudice with the right to re-plead consistent with Rule 9(b).

Accordingly,

IT IS ORDERED on this 10th day of June, 2009 that the Defendants' motion [6] is **GRANTED** as to Count II, **DENIED** as to Count III and Count V, as set forth above. Count IV is dismissed without prejudice with the right to amend the complaint, as to this count only, within fifteen days from the date of this order.

                                  _/s/ Joseph H. Rodriguez_
                                  JOSEPH H. RODRIGUEZ,
                                  United States District Judge